**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**GERALD TATE,**

       **Plaintiff,**

**vs.**

                                                **Civ. No. 03-1174 LCS/KBM**

**JOHN FISH,**

       **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Renewed 50(b) Motion for Judgment as a Matter of Law, Defendant's Motion to Stay Proceedings to Enforce Judgment, Defendant's Rule 59 Motion to Amend or Alter Judgment, Plaintiff's Motion for Attorney's Fees, and Defendant's Motion to Review Costs Taxed by the Clerk. (Def's. Mot. J. Matter of Law, Doc. 54; Def's Mot. Stay Proceedings, Doc. 56; Def's. Mot. Amend or Alter J., Doc. 57; Pl's. Mot. Attorney Fees, Doc. 59; Def's. Mot. Review Costs, Doc. 76). The United States Magistrate Judge, acting upon consent and designation pursuant to 28 U.S.C. § 636, and having considered the record, arguments of counsel, relevant law, and being otherwise fully advised, finds that Defendant's Renewed 50(b) Motion for Judgment as a Matter of Law, Defendant's Motion to Stay Proceeding to Enforce Judgment, and Defendant's Motion to Review Costs Taxed by the Clerk should be **DENIED** and that Defendant's Rule 59 Motion to Amend or Alter Judgment and Plaintiff's Motion for Attorney's Fees should be **GRANTED IN PART** and **DENIED IN PART**.

## RENEWED 50(b) MOTION FOR JUDGMENT AS A MATTER OF LAW

On October 27, 2004 Defendant filed his Renewed 50(b) Motion for Judgment as a Matter of Law, with supporting memorandum. (Def's. Mot. J. Matter of Law, Doc. 54; Def's. Mem. Supp. Mot. J. Matter of Law, Doc. 55).  The court previously ruled on this Motion during the trial which took place on October 12-13, 2004.  Plaintiff testified that on July 24, 2003 he and Defendant, an Animal Control Officer, were involved in an altercation which resulted in injuries to Plaintiff.  Briefly, Defendant arrived at Plaintiff's house on the date in question in order to investigate a problem Plaintiff was having with a skunk. Plaintiff testified that Defendant remained in his vehicle and that he told Defendant that he did not need his help.  Plaintiff started walking away from Defendant's vehicle and returned after Defendant yelled out to him.  Upon noticing a tape recorder that Defendant had placed between his legs, Plaintiff reached through the driver's side window and tried to grab the tape recorder.  Plaintiff testified that as he was reaching through the window, Defendant hit Plaintiff's left arm with a metal baton, or ASP. Plaintiff pushed Defendant back with his right arm and then backed up from Defendant's vehicle.  Defendant then jumped out of the vehicle and pursued Plaintiff on his property.  Defendant struck Plaintiff with the metal baton three to four times and caused injury to Plaintiff's head, elbow, and eye.  The altercation ended upon Plaintiff's retreat.

A Motion for Judgment as a Matter of Law should only be granted "if there is no legally sufficient evidentiary basis for a claim under the controlling law." *Brown v. Gray*, 227 F.3d 1278, 1285 (10th Cir. 2000).  I consider the evidence in favor of the non-moving party. *Id.*  All of the issues raised by Defendant in his Renewed 50(b) Motion for Judgment as a Matter of Law were fully considered and the Motion was ruled upon in open court and transcribed during the trial.  For the reasons stated therein, Defendant's Renewed 50(b) Motion is **DENIED.**

## **RULE 59 MOTION TO AMEND OR ALTER JUDGMENT**

On October 27, Defendant filed a Rule 59 Motion to Amend or Alter Judgment, with supporting memorandum. (Def's. Mot. Amend or Alter J., Doc. 57; Def's. Mem. Supp. Mot. Amend or Alter J., Doc. 58). Defendant states that his Motion is essentially a motion for reconsideration. (Def's. Mem. Supp. Mot. Amend or Ater J. at 2, Doc. 58 at 2 (citing *Hilst v. Bowen*, 874 F.2d 725, 726 (10th Cir. 1989)). Whether to grant or deny a motion for reconsideration is a matter committed to the court's discretion. *Hancock v. City of Oklahoma City*, 857 F.2d 1394, 1395 (10th Cir. 1988). In exercising this discretion, courts have generally recognized three major grounds which justify reconsideration; 1) an intervening change in controlling law; 2) availability of new evidence; and 3) the need to correct clear error or prevent manifest injustice. *See Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citation omitted).

### **A.  Punitive Damages Instruction**

Plaintiff argues that it was error for the Court to submit a punitive damages instruction to the jury because Defendant failed to introduce any evidence regarding Defendant's evil motive or intent or reckless indifference. (Def's. Mem. Supp. Mot. Amend or Alter J. at 2, Doc. 58 at 2). In my view, when there is a genuine issue for a jury to decide in an excessive force substantive due process case, a punitive damages instruction is generally warranted. The Tenth Circuit has noted, "[f]orce that is inspired by malice or by 'unwise, excessive zeal amounting to an abuse of official power that shocks the conscience . . . may be redressed under [the Fourteenth Amendment].'" *Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003) (quoting *Hewitt v. City of Truth or Consequences*, 758 F.2d 1375, 1379 (10th Cir. 1985)). When this "shocks the conscience" standard is compared to the language given in the punitive damages instruction, *viz.*, ". . . if the Plaintiff has proved that Defendant acted

3

with malice or willfulness or with callous and reckless indifference to the safety or rights of others," in general, it appears that conduct that would shock the conscience would also be characterized as acting "with malice or willfulness or with callous and reckless indifference." (*See* Instructions at 12, Doc. 50 at 12). Based on the evidence and the demeanor of the witnesses, I find that this is one of those instances such that if the jury determined that Plaintiff's constitutional rights had been violated, there would be a genuine issue with regard to punitive damages. As such, I find that it was not error for the Court to submit a punitive damages instruction to the jury. Further, in reconsidering the submission of the instruction, I am not persuaded that it was clearly erroneous, involved a misunderstanding of law, or that Defendant has introduced any contradictory controlling authority. *See Servants of the Paraclete v. Does*, 204 F.3d at 1012 (citation omitted).

### B.  Punitive Damages Award

Plaintiff next argues that even if the punitive damages instruction was warranted, the award of $30,200.00 in punitive damages was excessive and violated Defendant's due process rights. (Def's. Mem. Supp. Mot. Amend or Alter J. at 4, Doc. 58 at 4). The court begins with a brief discussion of the purpose of punitive damages. As the Supreme Court has noted, "punitive damages may properly be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition." *BMW of N. Am. v. Gore*, 517 U.S. 559, 568 (1996) (citations omitted). Thus, the aim of punitive damages is "deterrence and retribution." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) (citations omitted). The court initially notes that it is at a loss to determine if the goal of punishment and retribution has been met with respect to this Defendant. Generally in order to determine whether the punitive damages awarded actually punish the Defendant, the court needs to know the Defendant's financial wherewithal. In this case, no information was offered during trial

as to Defendant's financial status. Thus it is impossible to determine whether the award of $30,200.00 actually punishes the Defendant. However, the jury was instructed that one of the purposes of awarding punitive damages was to ". . . deter the defendant *and others* from engaging in similar conduct in the future." (See Instructions at 12, Doc. 50 at 12) (emphasis added). I find that the punitive damages awarded in this case would achieve the purpose of having a deterrent effect on others.

As the Supreme Court noted, the Due Process clause of the Fourteenth Amendment "prohibits the imposition of grossly excessive or arbitrary punishments of a tortfeasor." *Id.* (citations omitted). As such, the Court has developed a three prong test for courts reviewing punitive damages: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *Campbell*, 538 U.S. at 418 (citing *BMW*, 517 U.S. at 575). After a discussion of each of the factors below and given that the court is uncertain as to whether the punitive damages awarded actually punished the Defendant, I will find that an award of punitive damages is warranted but that a reduction of the award is necessary.

### 1. Degree of Reprehensibility

The first factor, the degree of reprehensibility of the defendant's misconduct, is the most important indicator of reasonableness. *Campbell*, 538 U.S. at 419 (citing *BMW*, 517 U.S. at 575). In reviewing this factor, the court is instructed to consider whether: (1) the harm caused was physical as opposed to economic; (2) the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; (3) the target of the conduct had financial vulnerability; (4) the

conduct involved repeated actions or was an isolated incident; and (5) the harm was the result of intentional malice, trickery, deceit or mere accident. *Campbell*, 538 U.S. at 419 (citing *BMW*, 517 U.S. at 576-577). The Supreme Court goes on to state that should only one of the factors weigh in favor of the plaintiff it may ". . . not be sufficient to sustain a punitive damages award." *Campbell*, 538 U.S. at 419. The absence of any of the factors weighing favorably for the plaintiff " . . . renders any [punitive damages] award suspect." *Id.*[1]

The court examines each of these factors in order to assess the degree of reprehensibility of Defendant's misconduct as they apply to the instant case. Plaintiff concedes that neither the third nor the fourth factor weigh in favor of Plaintiff. (Pl's. Resp. Mot. Amend or Alter J. at 5, Doc. 63 at 5.) Defendant concedes the first factor clearly weighs in favor of Plaintiff as his injuries were purely physical as opposed to economic. (Def's. Mem. Supp. Mot. Amend or Alter J. at 6, Doc. 58 at 6). According to Plaintiff's testimony, Defendant jumped out of his vehicle and hit Plaintiff three to four times with a metal baton and caused him injury. Deputy Kenneth Kramer testified that if he were in the same situation as Defendant, he would have hit Plaintiff once with the metal baton while still seated in the vehicle but that he would not have continued to hit Plaintiff with the metal baton after he exited the vehicle. As such, both the second and fifth factors weigh in favor of Plaintiff as Defendant's

---

[1] The Supreme Court also notes that "[i]t should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *Id.* (citing *BMW*, 517 U.S. at 575). The jurors were instructed in instruction Number 11 that "it should be presumed a plaintiff has been made whole by compensatory damages, so punitive damages should be awarded only if the defendant's misconduct, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." (Instructions at 12, Doc. 50 at 12). The court must presume that the jurors followed this instruction. *Atencio v. City of Albuquerque*, 911 F.Supp. 1433, 1438-1439 (D.N.M. 1995) (citing *Ellis v. Oklahoma*, 430 F.2d 1352, 1356 (10th Cir. 1970)).

conduct "evinced an indifference to or a reckless disregard of the health or safety of others" and indicated that "the harm was the result of intentional malice." *Campbell*, 538 U.S. at 419 (citing *BMW*, 517 U.S. at 576-577). Thus, as to the degree of reprehensibility of the conduct, three of the factors weigh in favor of Plaintiff such that the imposition of punitive damages was warranted and the jury so found.

### 2. Disparity Between Harm and Punitive Damages Award

The second guidepost is the disparity between the actual harm suffered by the plaintiff and the punitive damages award. *BMW*, 517 U.S. at 575. In *Campbell*, the Supreme Court stated ". . . we have been reluctant to identify concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damages award. We decline again to impose a bright-line ratio which a punitive damages award cannot exceed." *Campbell*, 538 U.S. at 424-425. However, the Supreme Court notes that "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree will satisfy due process. *Id.* at 425. In *BMW*, the Supreme Court noted that a punitive damages award exceeding four times the amount of the compensatory damages award may be "'close to the line'" but that "'it did not cross the line into the area of constitutional impropriety.'" *BMW*, 517 U.S. at 581 (quoting *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23-24 (1991)). The Court goes further to note that "because there are no rigid benchmarks that punitive damages award may not surpass, ratios greater than those we have previously upheld may comport with due process where a particularly egregious act has resulted in only a small amount of economic damages." *Campbell*, 538 U.S. at 425 (quotation omitted). A higher ratio may also be supported in cases where "injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine." *BMW*, 517 U.S. at 582.

7

In the current instance, Plaintiff was awarded $604.00 in compensatory damages and $30,200.00 in punitive damages which is a 50:1 ratio. (*See* J., Doc. 53). Defendant is correct to note that injury was not hard to detect since Plaintiff submitted photographs of his injuries to the jury and produced no other substantial evidence that indicated that future medical costs would be greater than the jury's compensatory damages award, that the injuries were permanent, or that it would be difficult to establish a cash value to Plaintiff's injuries. *See Bielecki v. Terminex Int'l Co.*, 225 F.3d 1159, 1166 (10th Cir. 2000). Further, while Defendant's conduct was certainly reprehensible, Plaintiff has not cited any authority to suggest that Defendant's actions were so "particularly egregious" to warrant a departure from the single digit ratio of punitive damages to compensatory damages that is generally suggested by the Supreme Court. (*See* Pl's. Resp. Mot. Amend or Alter J. at 7-8, Doc. 63) Thus, to the extent that the cases are equivocal, certainly in this case there is no reason to exceed the single digit ratio of punitive damages to compensatory damages and the court is reminded that "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages. . .will satisfy due process." *Campbell*, 538 U.S. at 425. Thus, punitive damages are reduced to a 9:1 ratio, a figure that wholly comports with due process. Thus, the punitive damages award is reduced to $5,436.00.

### **3. Difference Between Remedy and Civil Penalties in Comparable Cases**

The court will briefly discuss the third factor, the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. The court reviews § 1983 excessive force cases in which federal law with regard to punitive damages has been applied. In light of cases cited by Plaintiff, the award of a 9:1 ratio of punitive damages to compensatory damages is clearly in compliance with comparable cases. *See* Def's. Mot. Amend or

Alter J. at 11-13, Doc. 58 at 11-13.[2]  Thus, Defendant's Rule 59 Motion to Amend or Alter Judgment is **GRANTED IN PART** in order correct the error in the punitive damages award.  *See Servants of the Paraclete v. Does*, 204 F.3d at 1012.  Punitive damages are hereby reduced to the sum of $5,436.00.

### ATTORNEY'S FEES

On October 29, 2004, Plaintiff filed his Motion for attorney's fees totaling $17,964.60.  (Pl's. Mot. Attorney Fees, Doc. 59).  Defendant objects on several grounds, which are discussed fully below. (*See* Def's. Resp. Mot. Attorney Fees, Doc. 65).  A Plaintiff who prevails in litigation brought under 42 U.S.C. § 1983 is entitled to an award of attorney's fees.  42 U.S.C. § 1988(b) (2004).  Further, a plaintiff is considered a "prevailing party" if he succeeds on "any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quotation omitted).  Plaintiff is undoubtedly a prevailing party, as demonstrated by the jury's verdict on his constitutional claim.  It is ultimately within the discretion of the trial judge to determine what constitutes a reasonable attorney's fee.  *Barber v. T. D. Williamson, Inc*. 254 F.3d 1223, 1230 (10th Cir. 2001).

Defendant states that Plaintiff's Request for Attorney's fees are unreasonable and should be reduced for several reasons.  (*See* Def's. Resp. Mot. Attorney Fees, Doc. 65).  First, Defendant claims that Plaintiff's attorney's fees should be reduced because summary judgment was granted on Plaintiff's

---

[2] For example, in *Garner v. Meoli*, the United States District Court for the Eastern District of Pennsylvania found that a 3:1 ratio of punitive damages to compensatory damages was reasonable after police officers were found to have used excessive force when they shoved Plaintiff, pushed him to the ground and hit his head repeatedly against the wall and railing.  *Garner v. Meoli*, 19 F.Supp.2d 378, 383, 391-392 (E.D. PA 1998). *See also*, *Sabir v. Jowett*, 214 F.Supp.2d 226, 235, 246 (D. Conn. 2002) (a 1.66:1 ratio was upheld after police officers used excessive force when they pinned Plaintiff against a wall, pushed him to the floor, twisted his ankles and choked him).

state law tort claim.  (*See* Mem. Op. Order Re: Def.'s Mot. Summ. J., Doc. 34).   A fee may be reduced on the ground that the prevailing party has only achieved partial success. *Hensley*, 461 U.S. at 436-437.  However, civil rights suits often involve multiple claims based on "a common core of facts or . . . related legal theories." *Hensley*, 461 U.S. at 435.  As the Tenth Circuit has noted, "[i]n such cases, it is inappropriate for a district court to evaluate the individual claims as though they were discrete and severable. Litigants should be given the breathing room to raise alternative legal grounds without fear that merely raising an alternative theory will threaten the attorney's subsequent compensation. Instead, a court should focus on the 'significance of the overall relief' that the prevailing party has won." *Robinson v. City of Edmond*, 160 F.3d 1275, 1283 (10th Cir. 1998) (quoting *Hensley*, 461 U.S. at 435).  Given that the Plaintiff prevailed on his consitutional claim which was the heart of his case and that his state law claim was based upon identical facts, I find that Plaintiff's attorney's fee award should not be reduced despite the fact that Plaintiff did not prevail on his state tort law claim.  *Id.*

Defendant next claims that Plaintiff's award of attorney's fees should be reduced because items billed for paralegal services were items that were secretarial in nature and cannot be recovered as paralegal time since clerical tasks are usually covered by a firm's overhead and are not normally billed to clients. (Def's. Resp. Mot. Attorney Fees at 7-9, Doc. 65 at 7-9).  The Supreme Court has explained, ". . . paralegals are capable of carrying out many tasks, under the supervision of an attorney, that might otherwise be performed by a lawyer and billed at a higher rate. Such work might include, for example, factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence." *Missouri v. Jenkins*, 491 U.S. 274, 288, n.

10 (1989). The Supreme Court further clarified, "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Id.* In light of this authority, I find that the following tasks are clerical in nature and cannot be billed at the paralegal rate: $15.00 for filing return of service with District Court Clerk (slip listing 5849) and $45.00 for inputting interrogatories into computer and sending them to opposing counsel (slip listing 4742). *Jenkins*, 491 U.S. at 288; *See* Pl's. Mot. Attorney Fees, Ex. A, Doc. 59, Ex. A. The other items Defendant contests, the drafting of correspondence and the preparation of trial exhibit notebooks, are tasks that are generally carried out by paralegals and as such I find that they are appropriately billed at the paralegal rate. *Id.* In accord with my findings, Plaintiff's attorney's fees award will be reduced by $60.00 and the proportionate gross receipts tax.

Defendant next claims that Plaintiff's award of attorney's fees should be reduced because his counsel's time spent driving should be billed at a reduced hourly rate. . (Def's. Resp. Mot. Attorney Fees at 9-10, Doc. 65 at 9-10). In order to determine the award of travel costs for an attorney traveling to and from court appearances, the Court follows a two-step inquiry. First, the court must determine whether in the locality travel costs are customarily billed to a private client. *Bee v. Greaves*, 910 F.2d 686, 690 (10th Cir. 1990). Second, the court must determine whether the amount is reasonable. *Id.* It is Plaintiff's burden to establish entitlement to attorney fees and he has not submitted to the Court any binding precedent with regard to the first inquiry and there is no information that would allow me to take judicial notice as to this fact. *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995) (citation omitted); *See* FED. R. EVID. 201 (2004). As such, I am unable to make a finding as to whether travel costs are customarily billed to a private client. With regard to the second inquiry, I find that a reasonable amount would be half, or $75.00 per hour, of Mr. Rafkin's

hourly rate for each hour spent in transit. *See Aqulino v. University of Kansas*, 109 F.Supp. 2d 1319, 1326 (D. Kan. 2000). After reviewing Mr. Rafkin's Time Slip Listings, the court agrees with Defendant and that Plaintiff spent approximately 10.5 hours in transit. (*See* Pl's. Mot. Attorney Fees, Ex. A, Doc. 59, Ex. A). As such, I reduce the award for travel time by 50 percent from $1,575.00 to $787.50 plus tax.

Defendant finally argues that Plaintiff's attorney's fees should be reduced if the Court reduces Plaintiff's punitive damages award. Def's. Resp. Mot. Attorney Fees at 10-11, Doc. 65 at 10-11). Even though the Court has reduced Plaintiff's award of punitive damages in accord with due process as described in *BMW* and *Campbell*, Plaintiff has nonetheless prevailed on his claim for punitive damages and has been awarded punitive damages to the extent that the law allows. *See Campbell*, 538 U.S. at 424-425; *BMW*, 517 U.S. at 581 (quoting *Haslip*, 499 U.S. at 23-24). As such, there is no merit in Defendant's argument. Further, the court notes that an award of attorney's fees has been upheld when plaintiff only received nominal damages. *See Robinson*, 160 F.3d 1275. Thus, the award of attorney's fees should not be reduced merely because the punitive damages award was reduced in order to comport with controlling authority.

The Court now takes note of items Plaintiff has included in his Bill of Costs that would have more appropriately been sought in his Motion for Attorney's Fees. *See* Doc. 61, Pl's. Ex. A. Plaintiff correctly notes that the categorization of items as costs rather than fees is "not dispositive of their recoverability" and the court should determine whether items included in the bill of costs would be more appropriately included in an attorney's bill. *Bee v. Greaves*, 910 F.2d 686, 690 (10th Cir. 1990). As such, I find the following items that were included in Plaintiff's Bill of Costs are reasonable and will be awarded in Plaintiff's Motion for Attorney's Fees: Mileage for participation in settlement

12

conference, $73.78; mileage to participate in trial, $44.64, and hotel charges accrued during the jury trial, $178.64 for a total of $297.06.

Thus, Plaintiff's Motion for Attorney's Fees is **GRANTED IN PART** and **DENIED IN PART** as follows:

**Attorney's Fees**
Submitted attorney fees .................................................................…………………….$17,964.60
Less time erroneously billed as paralegal time.....................…....……….  -       $60.00
Less travel time erroneously billed at full rate........................................…    -   $787.50
Total Attorney's Fees Approved (Plus tax)................................................. $17,117.10
Plus items billed as costs that are more appropriately fees..................... +    $297.06

### **BILL OF COSTS**

Plaintiff filed his Bill of Costs, with supporting memorandum, on October 29, 2004. (Bill of Costs, Doc. 60; Pl's. Mem. Supp. Bill of Costs, Doc. 61). On December 9, 2004 the Clerk entered an Order settling costs and awarded Plaintiff $1,238.00 in costs. (Order Settling Costs, Doc. 75). On December 16, 2004, Defendant filed a Motion to Review Costs Taxed by the Clerk on the ground that should the Court grant its Motions for Judgment as a Matter of Law, its Motion to Amend or Alter Judgment or deny Plaintiff's Motion for Attorney's Fees, then the Court should reverse the Clerk's Order settling costs. (Def's. Mot. Review Costs, Doc. 76). If Defendant was still liable according to the underlying judgment, Defendant does not question the awarding of $1,238.00 in costs. As discussed above, Defendant's Rule 50(b) Renewed Motion for Judgment of Matter of Law has been denied, his Rule 59 Motion to Amend or Alter Judgment was granted in part and denied in part, and Plaintiff's Motion for Attorney's Fees has been granted in part and denied in part. As such, I find that Defendant's Motion to Review Costs Taxed by the Clerk is **DENIED** as moot in light of the rulings in the aforementioned Motions and the Clerk's Order settling costs in the amount of $1,238.00 stands.

### MOTION TO STAY PROCEEDINGS TO ENFORCE JUDGMENT

On October 27, 2004, Defendant filed a stipulated Motion to Stay Proceedings to Enforce Judgment. (Def's Mot. Stay Proceedings, Doc. 56). Defendant requested that the court stay any proceedings to enforce the Judgment pending the final disposition of his Rule 50(b) Renewed Motion for Judgment as a Matter of Law and his Rule 59 Motion to Amend or Alter Judgment. Defendant's Motion to Stay Proceedings to Enforce Judgment is **DENIED** as moot given that the Court has ruled on Defendant's Rule 50(b) and Rule 59 Motions.

### CONCLUSION

Defendant's Renewed 50(b) Motion for Judgment as a Matter of Law, Defendant's Motion to Stay Proceedings to Enforce Judgment, and Defendant's Motion to Review Costs Taxed by the Clerk are **DENIED** and Defendant's Rule 59 Motion to Amend or Alter Judgment and Plaintiff's Motion for Attorney's Fees are **GRANTED IN PART** and **DENIED IN PART** such that the punitive damages awarded are reduced to $5,436.00 and attorney's fees are reduced to $17,117.10 plus tax. Items billed as costs that are more appropriately fees are also awarded in the sum of $297.06.

**IT IS SO ORDERED.**

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**